## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM C. BELL ET AL.**                                                              **CIVIL ACTION**

**VERSUS**                                                                                        **No. 15-6394**

**FOSTER WHEELER ENERGY**                                                 **SECTION I**
**CORP. ET AL.**

## ORDER AND REASONS

William Bell was regularly exposed to asbestos while serving as an engineman, machinery repairman, and a machinist mate in the United States Navy in the 1960s. Mr. Bell was exposed to asbestos both while serving at sea on four ships as well as while training at a land-based Navy facility in Idaho.  After being diagnosed with mesothelioma in 2015, Mr. Bell sued the companies that he believed were responsible. Mr. Bell passed away in 2016, and his executor and brother ("plaintiffs") now pursue wrongful death and survivorship claims.

Defendants manufactured a wide range of products—including pumps,[1] valves,[2] condensers,[3] compressors,[4] and turbines[5]—on the vessels upon which Mr. Bell served.   Each of those products was allegedly used in conjunction with asbestos components, but the defendants had varying involvement in the manufacture and

---

[1] The pump defendants are Air & Liquid Systems Corporation ("Buffalo"), Aurora Pump Company, IMO Industries, Inc. ("DeLaval"), and Warren Pumps, LLC.
[2] The valve defendants are Atwood & Morrill Co. and Crane Co.
[3] The condenser defendant is Foster Wheeler Energy Corporation.
[4] The compressor defendant is York International Corporation.
[5] The turbine defendants are General Electric Company and CBS Corporation ("Westinghouse").

installation of those asbestos components.  For example, some of defendant-manufacturers' products did not include asbestos components when they left the factory.  Rather the asbestos parts (which were produced by third parties) were later added by third parties.  Further, even when some of the defendants included asbestos components in their products prior to the products leaving their factories, by the time Mr. Bell was exposed, those original asbestos components had been replaced (sometimes more than once) with other asbestos parts manufactured by independent third parties.

Courts are divided on when a manufacturer can be held liable for asbestos exposure that results from asbestos that the manufacturer did not itself add to its product.  Everyone agrees that if a manufacturer of a finished product negligently incorporates an asbestos-containing component into its product, and that asbestos-containing component causes harm, then the manufacturer is liable.  But what if the asbestos-containing component is replaced with another asbestos-containing component after the finished product has left the manufacturer's control, and it is the replacement component that causes harm?  Or what if the manufacturer's product (whether component or final product) does not contain asbestos, but it is used with asbestos products, and those asbestos products cause harm?  Can the manufacturer be liable in those circumstances?

The Sixth Circuit says no, never.  *See Lindstrom v. A-C Prods. Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005).  A number of courts—including most prominently the asbestos MDL court—have adopted that view.  Those courts hold that maritime

2

law does not impose on a manufacturer any duty to warn "about any product that is not its own 'product.'" *Devries v. Gen. Elec. Co.*, ___ F. Supp. 3d ____, 2016 WL 2910099, at *6 (E.D. Pa. 2016); *see also Vedros v. Northrup Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 1093678, at *2-3 (E.D. La. 2014). Accordingly, those courts require any asbestos plaintiff to "show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom*, 424 F.3d at 492. Some state court decisions (outside the maritime context) also follow that rule. *See, e.g.*, *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008).[6]

The Sixth Circuit's view—that a manufacturer is not liable unless the manufacturer made, sold, or otherwise controlled the precise aftermarket asbestos components that released the asbestos fibers that injured the plaintiff—has become known colloquially as the "bare metal defense."[7]  Because identification of that

---

[6] Defendants flag California as a state that follows the Sixth Circuit. However, defendants overlook that the California Supreme Court's decision in *O'Neil v. Crane Co.* leaves open the possibility that manufacturers can have duties to warn regarding products they did not produce in limited circumstances. *See, e.g.*, 266 P.3d 987, 996 n.6 (Cal. 2012) (not expressing a view on the "difficult questions" of whether a manufacture can be liable for producing (1) "a product that *required* the use of a defective part in order to operate" or (2) "specified the or required the use of a defective replacement part"). Thus, *O'Neil* offers the defendants little support in arguing that a manufacturer can *never* have a duty to warn regarding a product the manufacturer does not produce.

[7] The Court recognizes that the term "bare metal defense" is a bit of a misnomer when a defendant produces a product that includes asbestos components, and the Court suggests that a better name for the argument might be the "not my asbestos defense". However, this Court will nonetheless use the term "bare metal defense" in order to maintain continuity.

manufacturer is often nearly impossible, the Sixth Circuit's interpretation of maritime law has "the practical effect of precluding recovery in most instances." *Schwartz v. Abex Corp.*, 106 F. Supp. 3d 626, 657 (E.D. Pa. 2015).

Not all courts agree with the Sixth Circuit. Those courts, while agreeing with the general rule that companies only have to warn regarding their own products, recognize certain exceptions to the general rule. For example, the Northern District of Illinois has suggested that a manufacturer has a duty to warn regarding asbestos under maritime law when,

> the defendant manufactured a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.

*Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 769-70 (N.D. Ill. 2014). Similarly, the recent trend in state court asbestos litigation has been to recognize limited circumstances in which a manufacturer can have duties to warn regarding a product that the manufacturer did not make, sell, or otherwise control. *See, e.g.*, *In re N.Y.C. Asbestos Litig.*, ___ N.E.3d ___, 27 N.Y.3d 765, 790-99 (2016); *May v. Air & Liquid Sys. Corp.*, 129 A.3d 984, 999-1000 (Md. 2015); *McKenzie v. A.W. Chesterson Co.*, 373 P.3d 150, 154-61 (Or. Ct. App. 2016). Indeed, even the asbestos MDL Court—when not applying maritime law[8]—has recognized that manufacturers can have duties to

---

[8] *See also Devries*, 2016 WL 2910099, at *2 ("In deciding to adopt the decisions of the Sixth Circuit, this MDL Court was mindful that . . . the bulk of the thousands of asbestos cases pending in the MDL originated in the Sixth Circuit and would be remanded for trial (after completion of the MDL pre-trial process) to a district court within the Sixth Circuit . . . .").

warn about a product that the manufacturer did not make. *See Schwartz*, 106 F. Supp. 3d at 646 (applying Pennsylvania law).

Before the Court are ten motions[9] for summary judgment filed by the defendants. The motions argue, among other things, that this Court should follow the Sixth Circuit's view and grant summary judgment because the plaintiffs allegedly cannot establish that any of the defendants made, sold, or otherwise controlled the asbestos components that released the asbestos fibers that caused Mr. Bell's mesothelioma. Therefore, as a prerequisite of resolving defendants' motions, this Court must determine whether it agrees with the Sixth Circuit's view of maritime law, or whether the Court agrees with the courts rejecting the Sixth Circuit's view.

After reviewing the extensive case law, the Court concludes that it disagrees with both sides of the split in authority. As will be explained, the Sixth Circuit's view overlooks a defendant's potential liability for negligently advising that a customer use asbestos products in conjunction with the defendant's product. At the same time, however, the Court also believes that exceptions set forth by the courts disagreeing with the Sixth Circuit are equally problematic. For example, when determining liability, courts traditionally treat manufacturers of component parts differently from manufacturers of finished products. Yet, the courts rejecting the Sixth Circuit's view by and large do not distinguish between manufacturers of component parts and final products when determining a manufacturer's liability. Accordingly, this opinion will

---

[9] R. Doc. Nos. 198, 199, 201, 203, 206, 208, 210, 215, 224, 229.

set forth a third view of a manufacturer's liability for asbestos that a manufacturer does not add to its product, sell, or otherwise control.

## DISCUSSION

### I.   A Manufacturer's Liability for Asbestos On or In A Manufacturer's Product Under Maritime Law

Defendants argue that this Court should apply the Sixth Circuit's understanding of the bare metal defense and hold that a company can never have any liability for a product that it did not make, sell, or otherwise control.[10]   Plaintiffs argue that the mere foreseeability that a company's product may be used in conjunction with asbestos gives rise to a duty to warn regarding another company's product.   In the alternative, plaintiffs suggest that the Court apply the somewhat narrower standard recognized by the Northern District of Illinois in *Quirin*, wherein a company has a duty to warn regarding the hazards of asbestos when the company makes "a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material would necessarily

---

[10] "[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). After reviewing the location and connection tests, the Court agrees with the asbestos MDL court that the application of the test "results in maritime law governing those claims involving plaintiffs who were sea-based Navy workers so long as the allegedly defective product was produced for use on a vessel." *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011).   The Court therefore applies maritime law to determine defendants' liability for Mr. Bell's exposures to asbestos during Mr. Bell's shipboard service.

be replaced by other asbestos-containing material." *Quirin*, 17 F. Supp. 3d at 769-70. In the end, however, this Court is not entirely persuaded by either side.

Defendants' theory of the bare metal defense, based on the Sixth Circuit's opinion in *Lindstrom*, depends critically on establishing that a manufacturer's duties in negligence causes of action go no farther than a manufacturer's liability in a strict products liability action. *Cf. Devries*, 2016 WL 2910099, at *4-5 (explaining that there is no need to perform a separate analysis for negligence claims and strict liability claims). But that, respectfully, cannot be correct.

The common law of torts imposes a duty to avoid negligent misrepresentations even when "the information given is purely gratuitous, and entirely unrelated to any interest of the actor." *See* Restatement (Second) of Torts § 311 & cmt. c. So unless defendants want to attempt the seemingly impossible argument that manufacturing a product somehow immunizes that manufacturer from having duties that a purely gratuitous bystander would have when providing advice, *see* Restatement (Second) of Torts § 311 & cmt. c., the defendants are wrong when they argue that their liability in negligence is equivalent to their liability in a strict products liability action, *cf. Schwartz*, 106 F. Supp. 3d at 654 (applying Pennsylvania law, and concluding that even where a defendant is not liable under a strict liability theory "the same result need not arise from principles of negligence liability."). Even if defendants do not have a duty to warn arising out of merely manufacturing a particular product that might be used with asbestos, they can nonetheless have duties arising out of taking

7

the *additional action* of negligently recommending that a plaintiff use asbestos in conjunction with the manufacturer's products.[11]

Parts of plaintiffs' argument are equally unpersuasive.  For example, plaintiffs argue that the mere foreseeability that a bare metal product may be used in conjunction with asbestos gives rise to a duty to warn regarding another companies' product.  But such a duty would be impossibly broad, requiring that a manufacturer "investigate the potential risks of all other products . . . that might foreseeably be used with their own product and warn about all [those] risks." *O'Neil*, 266 P.3d at 1006.   Recognizing such a duty would also contravene the rule that a "court cannot recognize a duty based entirely on the foreseeability of the harm." *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d at 778; *see, e.g.*, *Schwartz*, 106 F. Supp. 3d at 656 (manufacturer is "*not* required to warn about all foreseeable hazards that could arise in connection with its product"); *O'Neil*, 266 P.3d at 1005 ("[I]n strict liability as in negligence, foreseeability alone is not enough to create an independent tort duty."

---

[11] Some defendants suggest that the Court should follow the Sixth Circuit in order to promote the uniformity of maritime law. *E.g.*, R. Doc. No. 325, at 6.  However, as the Fifth Circuit has observed in the analogous situation of interpreting the federal common law of contracts, "our interest in uniformity, though powerful, does not require us to adopt legal conclusions we believe to be in error." *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*, 758 F. 3d 592, 601 (5th Cir. 2014).  This Court is convinced that it is error to suggest that a manufacturer can affirmatively recommend that a customer use asbestos in conjunction with the manufacturer's product knowing that asbestos is harmful and knowing that the customer did not appreciate the dangers of asbestos, but then nonetheless expect to entirely escape potential liability because the manufacturer did not make, sell, or otherwise control the asbestos.

(internal quotation marks omitted)).[12]   Indeed, imposing plaintiffs' proposed duty to warn would have the effect of reading the long-recognized general rule that "component sellers should not be liable when the component itself is not defective" entirely out of products liability law.  Restatement (Third) of Torts: Product Liability § 5 cmt. a.[13]   Accordingly, before imposing liability, the Court will require plaintiffs to show that defendants did something beyond merely manufacturing a product that might foreseeably be used with asbestos.

---

[12] *See also* Restatement (Second) of Torts § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

[13] Plaintiffs try to rely on *Vickers v. Chiles Drilling Co.*'s statement that the normal use of a product "includes all reasonably foreseeable uses, including foreseeable misuse" to support their argument that foreseeability that a product might be used with an asbestos product is enough to give rise to a duty to warn.  822 F.2d 535, 538 (5th Cir. 1987).  That is a misreading of *Vickers*, which is about the foreseeability of harm created by the manufacturer's product—not the defective nature of another product entirely.

In any case, this Court's "traditional discretion" to ensure "fair[] and flexible" maritime rules, *Pope & Talbot v. Hawn*, 346 U.S. 406, 409 (1953), allows the Court to reject plaintiffs' broad conception of the duty to warn.  Just as in *East River Steamship Corp. v. Transamerica DeLaval Inc.*, where the Supreme Court determined "the increased cost to the public that would result from" recognizing a duty to prevent a product from injuring itself under either a negligence or strict liability theory "is not justified," 476 U.S. 858, 872 (1986), here the costs of imposing plaintiffs' proposed foreseeability rule far outweigh any benefit.  For example, under plaintiff's view, manufacturers of component parts would be "unjust[ly] and inefficient[ly]" required "to develop sufficient sophistication to review the decisions of the business entity that is already charged with responsibility for the integrated product." Restatement (Third) of Torts: Product Liability § 5 cmt. a.  A more narrowly tailored rule is plainly appropriate.  *See infra* n.16 and accompanying text (setting out more tailored rule).

But what is that something else? The courts rejecting the strong version of the bare metal defense advanced by the Sixth Circuit have usually resorted to a laundry list of factors to determine whether liability is warranted:

- The *Quirin* court suggests that, under maritime law, a manufacturer can be liable for failing to warn regarding asbestos when a manufacturer makes a product in which the use of asbestos components is "essential to the proper function of the . . . product." *Quirin*, 17 F. Supp. 3d at 769-70.

- The asbestos MDL court suggests that, under Pennsylvania law, a manufacturer can be liable for negligently failing to warn regarding asbestos when a manufacturer knows that "its product would be used with an asbestos-containing component part of the type at issue." *Schwartz*, 106 F. Supp. 3d at 654.

- The New York Court of Appeals suggests that, under New York law, a manufacturer can be liable for failing to warn regarding asbestos when asbestos is the "only product that both enables the intended function of the manufacturer's product and is available at a cost that is reasonably sustainable for the average individual or entity that purchases the manufacturer's product for the use at issue." *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d at 797-98.

- Finally, a number of courts suggest that a manufacturer can be liable for failing to warn regarding asbestos when the manufacturer specifies the use of asbestos components in conjunction with its product. *See, e.g., May*, 129 A.3d

at 996 (noting defendants' "manuals also contained sections on maintenance that detailed how to replace gaskets and packing, as well as a section on how to order replacement parts"); *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d at 793-94 ("[W]e have long regarded a manufacturer's intent to have its customers operate its product in a dangerous fashion as a significant cornerstone of its liability for injuries caused by its product.");  *cf. O'Neil*, 266 P.3d at 996 n.6 (not expressing a view on the "difficult question[]" of whether a manufacturer can be liable for "specif[ying] . . . the use of a defective replacement part").

However, this Court is concerned that simply applying those factors overlooks (1) the differing liabilities of manufacturers of final products and component parts, and (2) the differences between strict products liability actions and negligence actions.

For example, if the Court were to only look at whether asbestos was necessary to enable a manufacturer's product to function, that examination would ignore whether a manufacturer was merely producing a component part or assembling a final product.  Such an approach would be problematic because tort law treats the two types of entities differently.  Component part manufacturers are generally only liable when the component "is defective in itself," unless the component part manufacturer (1) "substantially participates in the integration of the component into the design of the product," "the integration of the component causes the product to be defective," and "the defect in the product causes the harm," Restatement (Third) of Torts: Product Liability § 5, or (2) negligently entrusts their component for use by a

11

person known to be incompetent, *see id.* § 5 cmt. b; Restatement (Second) of Torts § 390.   Meanwhile, manufacturers of final products are subjected to "assembler's liability" wherein an assembler that incorporates a defective component part into its finished product is liable for those defects.  *See* Restatement (Second) of Torts § 400; *cf. Klem v. E.I. DuPont De Nemours Co.*, 19 F.3d 997, 1002 (5th Cir. 1994) (applying Louisiana law, and noting "finished product manufacturer has the obligation to ascertain whether a component is appropriate for its intended use").

The Court concludes that it is not appropriate to simply base a manufacturer's liability on the fact that it is necessary to use asbestos in conjunction with the manufacturer's product.  Instead, the standard needs to take into account whether the manufacturer included asbestos components in the original product and, if not, the extent to which the component part manufacturer either (1) was involved in the design of the broader product, or (2) negligently entrusted its component to an incompetent assembler.  Likewise, as discussed earlier, the standard should also take into account whether the manufacturer recommended a customer use asbestos in conjunction with the manufacturer's product.  *See* Restatement (Second) of Torts § 311 & cmt. c.

It is similarly inappropriate to entirely blur the distinction between strict products liability and negligence liability.  In the first place, regardless of the long-running academic debate as to whether duty to warn products liability cases sounding in negligence and strict liability are really the same thing, "conceptual differences . . . continue to exist between warnings in negligence and warnings in

strict liability cases." 2 Frumer and Friedman, Products Liability § 12.02 (Matthew Bender, Rev. Ed. 2016). For example, there are some differences with respect to when a manufacturer is required to know a component is harmful. *Compare* Restatement (Second) of Torts § 402A ("[T]he seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger."), *with id.* § 388 (seller has duty to warn when seller "knows or has reason to know that the chattel is or is likely to be dangerous"),[14] *and id.* § 12 ("reason to know" standard examines whether "actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists.").[15] But even more importantly, once a manufacturer's liability is no

---

[14] *See also* Restatement (Second) of Torts § 394 ("The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.").

[15] These differences can be even more pronounced in certain jurisdictions. As one treatise explains,

For example, the California Supreme Court has asserted that in a negligent failure-to-warn case, a plaintiff must prove that a manufacturer did not warn of a particular risk "for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." In contrast, strict liability claims are not concerned with the standard of due care or the reasonableness of a manufacturer's conduct, because the doctrine's rules require a plaintiff to prove only that the defendant did not provide adequate warning of particular risks "known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." In strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is "immaterial." A reasonably prudent manufacturer might reasonably decide that a specific risk was not of a nature to need a warning. For example, the manufacturer may have performed its own testing which showed that the scientific community was incorrect. As explained by the *Anderson* court,

longer based on products liability law at all, but it is instead based solely on a negligent misrepresentation theory, a manufacturer's duties also vary. *Cf. Schwartz*, 106 F. Supp. 3d at 658 (under negligence standard, there is no "duty to undertake reasonable investigation to identify all potential hazards").  Accordingly, the Court also concludes that the legal standard for judging a manufacturer's liability should take account when a manufacturer's liabilities sound only in negligence.

So rather than a one-size-fits-all test, the Court will apply a more granular standard:

A.  *Liability of Manufacturer That Incorporates Asbestos Into Its Finished Product*: When a claim runs against a manufacturer of a finished product that incorporates asbestos components, the extent of the manufacturer's liability primarily turn on whether the harm was caused by a component added by the manufacturer or an aftermarket component added by the user.

- If the harm is caused by an asbestos component added to the product by the manufacturer, then, through the uncontroversial application of products liability law, the manufacturer may be liable in both strict liability and negligence actions.  *See, e.g.*, *Martinez v. Dixie Carriers*, 529 F.2d 457, 464-65 (5th Cir. 1976) (standard for negligent failure to warn set out by section 388 of

---

"[s]uch a manufacturer might escape liability under negligence principles. In contrast, under strict liability principles the manufacturer has no such leeway; the manufacturer is liable if it failed to give warning of dangers that were known to the scientific community at the time it manufactured or distributed the product."

2 Frumer and Friedman, Products Liability § 12.02 (Matthew Bender, Rev. Ed. 2016).

the Second Restatement of Torts); *id.* at 465-66 (standard for strict liability failure to warn set out by section 402A of the Second Restatement of Torts).

- If the harm is caused by an aftermarket asbestos component, the manufacturer is not liable in a strict products liability action. *See, e.g.*, *Schwartz*, 106 F. Supp. 3d at 653 (concluding that strict products liability under § 402A does not extend to products the manufacturer neither makes, nor sells, nor controls). However, a manufacturer that assembled a product with original asbestos components may still be liable under a negligence theory if a breach of the duty to warn regarding the original asbestos components that the manufacturer added to the product is *a* proximate cause of a subsequent harmful exposure to asbestos contained in an aftermarket replacement part, *see, e.g.*, *Schwartz*, 106 F. Supp. 3d at 654-55 (applying Pennsylvania law), subject to the manufacturer's ability to argue that the aftermarket product is a superseding cause of any injury, *see* Restatement (Second) of Torts § 440; *see also id.* § 442 (setting out the relevant factors in determining whether an intervening force is a superseding cause).[16]

---

[16] The Court recognizes that a number of courts—including courts that this Court has cited as persuasive authority on certain points—have seen this particular issue differently. However, the Court concludes that those cases incorrectly blur the question of whether a manufacturer has a duty to warn regarding an aftermarket product with the question of whether a manufacturer's original failure to warn regarding the hazards in a product as shipped may also be *a* proximate cause of a subsequent injury. After all, tort law has long recognized that a particular injury may have multiple proximate causes. *See, e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) ("Proximate cause is causation substantial enough and close enough to the harm to be recognized by law, but a given proximate cause need not be, and frequently is not, the exclusive proximate cause of the harm."). Indeed, particularly

 o Likewise, if the harm comes from an aftermarket asbestos component, the manufacturer may also face liability under a negligent misrepresentation theory if the manufacturer negligently recommends the use of a defective aftermarket product.  *See* Restatement (Second) of Torts § 311.

---

where a replacement aftermarket wear item—*i.e.*, a part that is designed to wear down and be replaced—is materially identical to a wear item in the originally shipped product, it is hard to see how the manufacturer's breach of its duty to provide a suitable warning with respect to the original product is not at least one of the proximate causes of a resulting injury.  *Cf. Schwartz*, 106 F. Supp. 3d at 654 & n.76 (noting original failure to warn regarding gaskets would give rise to liability for exposure to replacement gaskets but not exposure to replacement insulation).

 Such an exception to the general rule that a manufacturer is only liable for its own products may well be quite narrow.  But that does not justify a categorical rule that a failure to warn regarding a product as originally manufactured cannot, *as a matter of law*, be one of the proximate causes of a sailor's exposure to a hazardous substance contained in an aftermarket replacement component part.  That is all the more true here given that the frequently offered justification for the bare metal defense—the excessive costs of imposing a duty to warn regarding the interaction between a manufacturer's product and a third-party manufacturer's product, *see supra* n.13—does not apply when the underlying duty that is technically being breached is the manufacturer's obligation under assembler's liability to warn regarding the components that the manufacturer put into the product.  The manufacturer already has a preexisting obligation to investigate and warn regarding those risks.  *See, e.g.*, *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d at 798 (experience with asbestos in the design of the original product helps ensure that the manufacturer has sufficient "knowledge of the peril" so as to justify imposing liability in certain cases involving replacement parts).  Further, if anything, the manufacturer of the finished product containing asbestos may well be better placed to warn when compared to the manufacturer of an aftermarket wear item.  *See, e.g.*, *Schwartz*, 106 F. Supp. 3d at 657-58 & n.87 (noting practical difficulty of providing effective warnings on aftermarket asbestos components because the high heat on asbestos wear items obliterates warnings, and concluding that the manufacturer that placed asbestos in the original product should be legally incentivized to provide warnings); *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d at 791 ("[T]he end user is more likely to interact with the durable product over an extended period of time, and hence he or she is more likely to inspect warnings on that item or in associated documentation than to review warnings supplied by the maker of the 'wear item' . . . .").

16

B.  *Liability of A Bare Metal Component Part Manufacturer*:  When a claim runs against a manufacturer of a bare metal component part that was used in conjunction with an asbestos product, then the manufacturer's liability turns on whether the manufacturer did something beyond manufacturing the component part that was used in conjunction with the asbestos.[17]  If a component part manufacturer "simply designs a component to its buyer's specifications," Restatement (Third) of Torts: Product Liability § 5 cmt. e, and does nothing else, then the manufacturer—pursuant to the operation of the component parts doctrine—faces no liability unless the component part manufacturer's component "is defective in itself,"  *id.* § 5(a).  However, if the component part manufacturer does something beyond simply designing and manufacturing a component part, then the manufacturer may be liable under a variety of theories.

- If the bare metal component part manufacturer "is substantially involved in the integration of the component into the design of the integrated product, the component seller is subject to liability when the integration results in a defective product and the defect causes harm to the plaintiff."  *Id.* § 5 cmt. e. The component part manufacturer's liability in such a circumstance would lie in both negligence and strict liability.  *Cf. Martinez*, 529 F.2d at 464-65 (recognizing both theories of liability in products liability cases).

---

[17] If, on the other hand, the component part manufacturer does not make a bare metal product, but instead makes a component part containing asbestos, then, as previously noted, the component part manufacturer can be liable for that asbestos.

- If the bare metal component part manufacturer "supplies directly or through a third person" a component part "for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use," then the manufacturer "is subject to liability for physical harm resulting to them."   Restatement (Second) of Torts § 390. However, a manufacturer's liability in such circumstances would lie only in negligence.

- If the bare metal component part manufacturer recommends the use of a hazardous part in conjunction with the manufacturer's component part, then the manufacturer can face liability if the recommendation "negligently gives false information to another," and "harm results" to either (1) the recipient of the information or (2) "third persons" that the manufacturer "should expect to be put in peril by the" negligent recommendation.   *Id.* § 311.   Again, the manufacturer is liable only in a negligence action for such a recommendation.

## II.   Supplemental Briefing

This Court's third view of a manufacturer's liability for asbestos in and on the manufacturer's product creates difficulties for both sides' summary judgment briefing.  In particular, both sides' briefs analyze the defendants' liability under what this Court concludes are erroneous legal standards.   Accordingly, rather than sua sponte reviewing the record or relying on determinations that certain arguments

were waived, this Court will give the parties the ability to rebrief their summary judgment contentions.

In so doing, the Court does not want to re-plow ground already covered. Accordingly, the Court will limit each defendant to one summary judgment motion of no more than fifteen pages.  The Court will neither grant motions for excess pages nor motions for leave to file a reply brief.  The parties are urged to simplify their arguments, and focus on the arguments that they expect to win.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Atwood's motion for summary judgment (R. Doc. No. 208) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Aurora's motion for summary judgment (R. Doc. No. 210) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Buffalo's motion for summary judgment (R. Doc. No. 206) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Crane's motion for summary judgment (R. Doc. No. 201) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that DeLaval's motion for summary judgment (R. Doc. No. 229) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Foster Wheeler's motion for summary judgment (R. Doc. No. 199) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that General Electric's motion for summary judgment (R. Doc. No. 198) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Warren's motion for summary judgment (R. Doc. No. 224) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Westinghouse's motion for summary judgment (R. Doc. No. 203) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that York's motion for summary judgment (R. Doc. No. 215) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants shall re-file their summary judgment briefs no later than **October 18, 2016.**  Plaintiffs' responses are due no later than **November 4, 2016.**

**IT IS FURTHER ORDERED** that a status conference in this matter shall take place at **9:00 AM** on **Tuesday, October 11, 2016** in the chambers of the undersigned U.S. District Judge**.**  Counsel may participate by phone if the Court is provided with a telephone number prior to the conference.[18]  Plaintiffs should be prepared at conference to discuss which claims they intend to pursue given the legal standard set forth in this opinion.

---

[18] The Court notes that its conference system can support only a limited number of callers.  Accordingly, the Court suggests that, as a matter of courtesy to out-of-state counsel that wish to participate, New Orleans-based counsel attend the conference in person and, further, that each party minimize the number of attorneys participating by phone.

**IT IS FURTHER ORDERED** that both the pre-trial conference and the trial are **CONTINUED** to dates to be set at the status conference in consultation with the Court's case manager.

New Orleans, Louisiana, October 4, 2016.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**