UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. BELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-6394** |
| **FOSTER WHEELER ENERGY CORP. ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court are three motions[1] in limine filed by defendants to exclude plaintiffs' causation experts. Defendants argue that Dr. Richard Kradin, Dr. Terry Kraus, and Mr. Frank Parker III should be precluded from testifying because, among other reasons, each relies on the "each and every exposure" theory for determining causation. For the following reasons, defendants' motions are granted in part and denied in part.

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[1] *See* R. Doc. No. 204; R. Doc. No. 211; R. Doc. No. 216.

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert

testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the

common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## Analysis

Defendants seek to exclude Dr. Kraus for (1) being unqualified and (2) improperly relying on the "each and every exposure" theory of causation; Dr. Kradin for (1) prematurely ending his deposition, and (2) improperly relying on the "each and every exposure" theory of causation; and Mr. Parker for improperly relying on the "each and every exposure" theory of causation. Because of the significant overlap in the analysis of the experts' methodologies, the Court first addresses the objections to Dr. Kradin's deposition and Dr. Kraus's qualification.

### I. Dr. Kradin's Deposition

Defendants argue that Dr. Kradin should be precluded from testifying because Dr. Kradin prematurely terminated his deposition. But since defendants filed their motion, the parties have finished deposing Dr. Kradin. As such, without more evidence of malfeasance on the part of the plaintiffs, the Court concludes that striking Dr. Kradin would be a disproportionate remedy.[2]

---

[2] To the extent that the defendants believed that the plaintiffs acted inappropriately in terminating Dr. Kradin's testimony, defendants could have sought monetary sanctions.

## II.     Dr. Kraus's Qualifications

Defendants argue that Dr. Kraus—a radiation oncologist—lacks sufficient qualifications to testify regarding the causation of mesothelioma. However, under Rule 702's "liberal standards for qualifications of experts," an expert need not have the perfect possible academic credentials to testify as an expert. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 754 (3d Cir. 1994). Dr. Kraus's extensive clinical history in treating asbestos-related diseases and apparent familiarity with the relevant literature is more than sufficient to clear the low threshold set by Rule 702. Defendants' objections to Dr. Kraus's qualifications go to the weight that Dr. Kraus's testimony should be accorded, not its admissibility. *See, e.g.*, *Vedros v. Northrup Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 562 (E.D. La. 2015).

## III.    Methodology

By now, the deficiencies of the "each and every exposure" theory of causation in asbestos exposure cases have been extensively discussed and will not be repeated here. *See, e.g.*, *id.* at 562-63. Suffice it to say, the Court continues to be of the view that the each and every exposure theory "is not an acceptable approach for a causation expert to take" because it is "nothing more than the *ipse dixit* of the expert." *Comardelle v. Penn. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015) (internal quotation marks omitted). The rules of evidence do not permit an expert to testify that "[j]ust because we cannot rule anything out" that "we can rule everything in." *Smith v. Ford Motor Co.*, No. 08-630, 2013 WL 214378, at *3 (D. Ut. 2013).

To cure the deficiencies with the each and every exposure theory, the plaintiffs' experts attempt to take a different tack. Rather than opining that each and every exposure to asbestos caused Mr. Bell's mesothelioma, plaintiffs' experts opine only that each and every "significant" exposure to asbestos caused Mr. Bell's mesothelioma. Though the precise boundaries of a "significant exposure" are not spelled out, plaintiffs' experts suggest that a significant exposure is, at the very least, an exposure equivalent to those recognized in the academic literature as having the potential to increase the statistical risk of mesothelioma in portions of the population. *See, e.g.*, R. Doc. No. 346, at 13-16 (discussing Dr. Kraus's analysis of secondary literature indicating that low levels of asbestos exposure have been shown to produce increased number of mesothelioma cases in portions of the population); R. Doc. No. 345, at 8 ("Dr. Kradin states that an asbestos exposure . . . can be 'significant' or 'substantial' if it is of the nature, type and duration that has been shown to cause mesothelioma in the medical and scientific literature . . . ."); R. Doc. No. 342-18, at 61:7-12 (Mr. Parker testifying that exposures caused mesothelioma because they meet Helsinki criteria).

The Court sees no material difference between the "every exposure" theory and the "every significant exposure" theory. *See, e.g.*, *Vedros*, 119 F. Supp. 3d at 563 ("The Court finds no meaningful distinction between the 'every exposure' theory and an 'every exposure above background' theory."). The academic studies on which plaintiffs' experts rely to determine whether a particular exposure is significant track how certain exposure levels result in an increase in the number of asbestos cases that

will occur, or note how mesothelioma is prominent in certain populations. That evidence does not provide a basis for determining legal causation: "increasing the *likelihood* of disease is a different matter than actually causing such disease." *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 847 (E.D.N.C. 2015).[3]

Moreover, when relying on the various studies, plaintiffs' experts provide no testable methodology for determining whether Mr. Bell is one of the members of the population for which a particular exposure level attributable to a particular defendant's products caused mesothelioma or whether Mr. Bell is one of the many members of the population for which a certain marginal exposure level does not in fact result in mesothelioma.[4]  Accordingly, though skillfully cloaked, plaintiffs experts' conclusions that defendants' products caused Mr. Bell's mesothelioma again impermissibly rest on little more than the experts' *ipse dixit*.

The Court will not allow plaintiffs' experts to entirely rely on evidence of general causation to offer the "specific causation opinion *in this case*" that a particular product caused Mr. Bell's mesothelioma. *Comardelle*, 76 F. Supp. 3d at 635. Dr. Kraus's, Dr. Kradin's, and Mr. Parker's opinions on specific causation are unreliable

---

[3] In addition, the Helsinki Criteria on which plaintiffs' experts rely "is concerned only with whether mesothelioma can be attributed to asbestos, as a general matter" and neither "address[es] whether a *component* of a cumulative exposure of asbestos is causative" nor sets out "principles for distinguishing which particular occupational domestic or environmental exposures to asbestos caused the disease." *Yates*, 113 F. Supp. 3d at 862 (internal quotation marks and alterations omitted).

[4] Plaintiffs cannot simply rely on the fact that Mr. Bell developed mesothelioma to substantiate this point given the possibility that Mr. Bell's other numerous exposures to asbestos caused his mesothelioma.

and must be excluded under Rule 702.[5] However, the plaintiffs' experts may testify—subject to a potential Rule 403 objection at trial—regarding Mr. Bell's mesothelioma and issues of general causation. *See Vedros*, 119 F. Supp. 3d at 565. Likewise, provided that any Rule 403 objections are overcome, the experts may also respond to defendants' argument that certain exposures were *de minimis* by noting that certain studies suggest that specific causation cannot be ruled out.

Accordingly,

**IT IS ORDERED** that defendants' motion to exclude the testimony Dr. Richard Kradin, Dr. Terry Kraus, and Mr. Frank Parker III are **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

New Orleans, Louisiana, October 5, 2016.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[5] The Court does not address defendants' alternative arguments as to why the experts should be precluded from offering specific causation opinions.