UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. BELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-6394** |
| **FOSTER WHEELER ENERGY CORP. ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] in limine filed by the pump and valve defendants ("defendants") to exclude certain studies and videos produced by Dr. James Millette, as well as a motion[2] to file a reply in support of their motion. For the following reasons, the motion to file a reply is granted, and the motion in limine is granted in part and denied in part.

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[1] *See* R. Doc. No. 207.
[2] *See* R. Doc. No. 351.

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

    The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert

testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the

common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## ANALYSIS

Defendants challenge two aspects of Dr. Millette's proposed testimony.[3] First, defendants argue that some—but not all—of the academic studies that Dr. Millette relies on are not reliable and do not fit the facts of the case, and thus he should be precluded from discussing them at trial. Second, defendants argue that Dr. Millette should not be able to display any videos he created that rely on the "Tyndall Lighting" technique.

### I. Reliability and Fit of Studies

Both the reliability and the fit prongs of the *Daubert* examination require that an expert's analysis be reasonably connected to the facts of a case. *See, e.g.*, *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (reliability); *In re Paoli R.R. Yard PCB Litig.*, 34 F.3d 717, 742-43 (3d Cir. 1994) (fit).[4] Defendants argue that any

---

[3] Defendants' motion additionally asserts that Dr. Millette's testimony should be excluded because "Dr. Millette contends that each exposure to asbestos regardless of fiber type . . . increases the risk [of] developing mesothelioma." R. Doc. No. 207-1, at 8. However, Dr. Millette does not claim to offer that opinion. *See* R. Doc. No. 343-9, at 32:11-13 ("I'm not going to have any opinions about risk or various asbestos types and what their hazards might be."). Accordingly, the Court does not address the issue.
[4] The fit prong of the *Daubert* analysis requires that there be "a valid *scientific* connection to the pertinent inquiry as a precondition to admissibility." *In re Paoli*,

4

testimony by Dr. Millette as to activities that Mr. Bell admittedly did not perform on a ship is unreliable and does not "fit" the case.  The Court is unconvinced, on these facts, that any testimony by Dr. Millette as to not-exactly-on-point studies would violate *Daubert*.

The requirement that expert testimony be reliable and fit the facts of the case does not require that expert testimony be relevant to every single issue in the case. Even assuming *arguendo* that defendants are right and that some of the studies are irrelevant to Mr. Bell's specific exposures, that evidence nonetheless remains of value to the jury when evaluating the probative value of the general studies of the prevalence of mesothelioma in Navy machinists.  The same is true of defendants' argument that reference to some of the studies should be precluded because those studies did not take place in environments that were substantially similar to Mr. Bell's working quarters.  Just as it is acceptable to introduce evidence examining whether a chemical causes cancers in animals when examining whether that chemical causes cancer in humans because the animal studies would be "of some use . . . in eliminating those chemicals not likely to cause disease in humans," *In re Paoli*, 35 F.3d at 781, the Court believes that the studies conducted in more confined working environments will nonetheless be of "some use" to the jury in setting the upper-bounds of Mr. Bell's possible exposure to asbestos from any one particular activity.

---

34 F.3d at 743.  Satisfaction of the fit prong ensures that the testimony of the expert will assist the trier of fact.

In addition, defendants' own arguments demonstrate why there is little need to protect the jury from these studies: after all, if "common sense tells us that scraping a gasket with a hand scraper . . . is an entirely different activity than scraping gaskets with power scrapers,"[5] then there is little-to-no risk that such testimony will confuse the jury.  Further, defendants can use cross examination to highlight that Mr. Bell did not perform all of the activities examined in some of the studies cited by Dr. Millette.[6]  Accordingly, the Court denies the majority of defendants' *Daubert* challenge to Dr. Millette's proposed testimony.

Notwithstanding the Court's approval of most of Dr. Millette's proposed testimony, the Court does have one remaining concern.  Though the Court believes that Dr. Millette can testify as to laboratory studies that were not substantially similar to Mr. Bell's working environments, the Court will require that (1) those studies be put in the proper context, and (2) the plaintiffs will not be able to use Dr. Millette's testimony as a subterfuge to speculate as to Mr. Bell's working conditions. It is neither reliable nor permissible for Dr. Millette to testify—as he suggests in his expert report—that the studies conducted in wholly disparate working environments

---

[5] R. Doc. No. 351-2, at 4.
[6] The Court also rejects defendants' argument that the studies are unduly prejudicial because they note which specific brand of valve that they are testing.  R. Doc. 207-1, at 2.  That information is undeniably relevant, and it strains credulity to suggest that providing it to the jury is somehow unjust or unfair.  Indeed, given defendants' other objections that some of Dr. Millette's studies are insufficiently related to Mr. Bell's specific exposures to defendants' products, defendants' claim of unfair prejudice when those studies specifically address defendants' products appears to be little more than a creative attempt to use the Federal Rules of Evidence to play "heads I win, tails you lose."

represents the *likely* exposure Mr. Bell had from performing a particular activity on a ship. *See, e.g.*, *Quirin v. Lorillard Tobacco Co.*, No. 13-2633, 2014 WL 904072, at *4 (N.D. Ill. 2014) ("Based on these estimates, Dr. Millette will testify as to what type of exposure Mr. Quirin could have had under different assumed conditions. As long as these opinions are grounded in Dr. Millette's own studies and relevant research he has reviewed, *and as long as Dr. Millette does not speculate about facts with which he is unfamiliar, such as the frequency and duration of exposure Mr. Quirin actually experienced*, the testimony is admissible." (emphasis added)).  Accordingly, the Court will grant the defendants' motion insofar as Dr. Millette cannot testify that a particular study represents Mr. Bell's likely exposure to asbestos until—at the very least—making a threshold showing in a *Daubert* hearing that that study took place under conditions substantially similar to Mr. Bell's working conditions.

## II. Tyndall Lighting Videos

Defendants also challenge plaintiffs' use as demonstrative exhibits[7] certain videos produced by Dr. Millette using "Tyndall Lighting."  Defendants' challenge is premature.  How exactly plaintiffs propose to use the videos and the representations that plaintiffs will make in conjunction with the videos affects the legal analysis that this Court is supposed to apply.  Therefore, the Court will deny defendants' challenge for now, but defendants remain free to timely challenge the admissibility of the videos under the Federal Rules of Evidence in pre-trial briefing.

Accordingly,

---

[7] *See* R. Doc. No. 343, at 11.

**IT IS ORDERED** that defendants' motion in limine is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that defendants' motion to file a reply is **GRANTED**.

New Orleans, Louisiana, October 11, 2016.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE