UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. BELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-6394** |
| **FOSTER WHEELER ENERGY CORP. ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court is the plaintiffs' motion[1] for reconsideration of this Court's order[2] excluding the specific causation opinions of plaintiffs' medical experts. In its previous order, the Court ruled:

> The Court will not allow plaintiffs' experts to entirely rely on evidence of general causation to offer the "specific causation opinion in this case" that a particular product caused Mr. Bell's mesothelioma. [*Comardelle v. Penn. Gen. Ins. Co.*, 76 F. Supp. 3d 628, 635 (E.D. La. 2015)]. Dr. Kraus's, Dr. Kradin's, and Mr. Parker's opinions on specific causation are unreliable and must be excluded under Rule 702. However, the plaintiffs' experts may testify—subject to a potential Rule 403 objection at trial—regarding Mr. Bell's mesothelioma and issues of general causation. [*See Vedros v. Northrup Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 565 (E.D. La. 2015)]. Likewise, provided that any Rule 403 objections are overcome, the experts may also respond to defendants' argument that certain exposures were *de minimis* by noting that certain studies suggest that specific causation cannot be ruled out.

R. Doc. No. 358, at 7-8.

The latest round of briefing does not convince the Court that its previous order was in error. Nevertheless, the Court writes again in order to clarify the basis for its ruling, as well as the parameters within which plaintiffs' experts must testify at trial.

---

[1] R. Doc. No. 378.
[2] R. Doc. No. 358.

I.

Reconsideration of interlocutory orders is governed by Rule 54(b) of the Federal Rules of Civil Procedure. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Bernard v. Grefer*, No. 14–887, 2015 WL 3485761, at *5 (E.D. La. June 2, 2015) (Fallon, J.). The general practice of courts in this district has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 393 (E.D. La. 2016) (Africk, J.).

A motion to alter or amend a judgment filed pursuant to Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted).

II.

Under general maritime law, in order to recover against any defendant, the plaintiffs must prove that their injury was "legally caused" by that defendant. *Osprey Underwriting Agency, Ltd. v. Nature's Way Marine, L.L.C.*, 642 F. App'x 391, 394 (5th Cir. 2016). That is, the plaintiffs must prove that exposure to a defendant's asbestos—or to asbestos for which that defendant was otherwise responsible under

2

the rubric set forth in R. Doc. No. 352—was a "substantial factor" in causing Bell's mesothelioma. *See id.*

The cumulative damage of asbestos exposure is widely recognized. *See Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1142 (5th Cir. 1985); *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628, 633 (E.D. La. 2015) (Africk, J.) ("This is referred to as a dose-response relationship in which the more someone is exposed to asbestos, the greater their risk for the development of mesothelioma." (citation omitted)). However, it does not follow that every breath of asbestos dust a person takes is a substantial factor in causing the person to develop mesothelioma. Courts have consistently rejected such "every breath" or "every exposure" theories of causation. *See* R. Doc. No. 358, at 5. In the same vein, courts have rejected the "every exposure above background" theory of causation, which posits that each and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease. *See Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 563 (E.D. La. 2015) (Barbier, J.).

So what must an expert in a multi-defendant asbestos lawsuit show in order to offer the opinion that exposure to a defendant's asbestos was a substantial factor in causing the plaintiff's mesothelioma? That is a difficult question, which explains why defendants did not try to answer it in their supplemental briefing despite the Court's direction that they do so. In the *Vedros* case cited in this Court's previous opinion, Judge Barbier appeared to recognize that an expert could offer the opinion that certain "special exposures" were substantial contributing factors to the plaintiff's

3

mesothelioma, but he simply found that the expert at issue could not do so because he had not conducted a sufficient qualitative evaluatation of the plaintiff's specific history of exposures in formulating his opinion. *See Vedros*, 119 F. Supp. 3d at 564 (applying Louisiana law) (citing *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 168 So.3d 556 (La. App. 1 Cir. 2014)).

Similarly, in the *Rost* case relied on heavily by the plaintiffs in their supplemental briefing, the Pennsylvania Supreme Court allowed an expert to testify that the plaintiff's exposure to the defendant's products was "a significant contributing cause" of his development of mesothelioma where the expert opinion was based on a detailed qualitative and quantitative assessment of the nature of the plaintiff's exposure. *See Rost v. Ford Motor Co.*, 2016 WL 6876490, at *8 (Pa. Nov. 22, 2016) (permitting expert opinion that "Rost's exposures to asbestos at Smith Motors were sufficiently frequent, regular, and proximate to permit the inference that these exposures were substantially causative").[3]

In line with *Vedros* and *Rost*, this Court does not rule out the possibility that an expert can offer a specific causation opinion in a multi-defendant mesothelioma case. Rather, the Court is simply of the view that plaintiffs' experts' opinions in this case are not reliable enough to be admitted. The fundamental flaw in the proposed expert opinions is the same flaw that courts have recognized in the "every exposure" and "every exposure above background" theories of causation: they are specific

---

[3] It is true, as defendants point out, that the *Rost* decision applied Pennsylvania law and not general maritime law. *See* 2016 WL 6876490, at *8. However, there are no differences between the two laws material to the point the Court is making above.

causation opinions untethered to the decedent himself, based only on generalized studies of the effects that certain exposure levels can have on the population. As this Court explained in its first order, "increasing the *likelihood* of disease is a different matter than actually causing such disease," and evidence that mesothelioma is more prominent in certain populations does not of itself provide a basis for opining as to legal causation. *See* R. Doc. No. 358, at 7.

As an example, Dr. Kradin relies *inter alia* on a study which showed that exposure levels of 0.002 f/cc were associated with 46 cases of mesothelioma per 1,000,000 people, R. Doc. No. 211-4, at 14, to establish that even low level asbestos exposure can cause mesothelioma, R. Doc. No. 211-4, at 17. But without more of an explanation supported by a reasonable methodology, such studies are insufficient to render a specific causation opinion because they represent little more than a guess as to which group Mr. Bell fits. The fact that Mr. Bell actually developed mesothelioma is not sufficient to plug the analytical gap because he was exposed to multiple forms of asbestos manufactured by multiple defendants on multiple occasions. As such, while the evidence may support the expert opinion that low levels of exposure to a defendant's product *could have* caused Mr. Bell's mesothelioma, it does not support the conclusion that they did. Of course, if the numbers were different—say 900,000 cases of mesothelioma out of 1,000,000 people—the result could be different as well. The Court expresses no opinion as to the appropriate tipping point.

As plaintiffs repeat throughout their motion, their experts believe based on a review of the evidence and the literature that Bell's exposures exceeded the levels

5

which have been proven to cause mesothelioma. That is an acceptable opinion. What is not acceptable is the next step: the opinion that, because these levels of exposure could cause mesothelioma, they more likely than not did so in this instance.

### III.

In sum, Dr. Kraus's, Dr. Kradin's, and Mr. Parker's opinions on specific causation are unreliable and must be excluded under Rule 702. However, the plaintiffs' experts may testify—subject to a potential Rule 403 objection at trial—regarding Mr. Bell's mesothelioma and issues of general causation. Likewise, provided that any Rule 403 objections are overcome, the experts may also respond to defendants' argument that certain exposures were *de minimis* by noting that certain studies suggest that specific causation cannot be ruled out.

Plaintiffs ask for clarification on this latter point. They ask: "Under this Court's current judgment, are plaintiffs' experts allowed to opine that certain scientific studies suggest that Bell's exposures to defendants' products were significant?" R. Doc. No. 378-1, at 19. They also ask: "Are plaintiffs' experts . . . allowed to offer . . . testimony that the levels to which Bell was exposed to defendants' products are recognized as significant exposures according to the scientific literature?" R. Doc. No. 378-1, at 20.

The answer to both questions is "yes," provided that it is made clear that the term "significant" means only "statistically significant" in the sense that exposure at a certain level for a certain duration can cause x in y number of people to develop mesothelioma. But plaintiffs' counsel should tread carefully in this area, as the Court will not permit a backdoor opinion as to specific causation in the guise of an opinion

6

about what the studies suggest.  To the extent counsel believes a question flirts with this line, they should approach the bench for guidance.

**IT IS ORDERED** that the motion for reconsideration is **DENIED** as set forth herein.

New Orleans, Louisiana, March 6, 2017.

_____
            **LANCE M. AFRICK**
     **UNITED STATES DISTRICT JUDGE**