## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM C. BELL ET AL.**                                      **CIVIL ACTION**

**VERSUS**                                                           **No. 15-6394**

**FOSTER WHEELER ENERGY**                                  **SECTION I**
**CORP. ET AL.**

## ORDER AND REASONS

Before the Court are two *Daubert* motions filed by the plaintiffs: one motion[1]

to exclude expert testimony by Dr. Michael Graham, and one motion[2] to exclude

expert testimony by Dr. Mark Taragin.  The Court grants the motions in part and

denies the motions in part for essentially the same reasons set forth in the Court's

previous order[3] limiting the expert opinions of plaintiffs' experts.  For the following

reasons, specific causation opinions by Dr. Graham and Dr. Taragin will not be

permitted.

## I.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert

witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588

(1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will
> > help the trier of fact to understand the evidence or to determine a fact
> > in issue;

---

[1] R. Doc. No. 220.
[2] R. Doc. No. 225.
[3] R. Doc. No. 358.

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quotations omitted). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quotations omitted). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has

been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## II.

The Court first addresses the proposed testimony of Dr. Graham, a forensic pathologist.  Dr. Graham has been hired to provide causation testimony for six different defendants in this case.[4]  The expert reports Dr. Graham provided for each defendant are identical in every respect except one.  The final line of each report provides: "It is my opinion to a reasonable degree of medical certainty that Mr. Bell's pleural malignant mesothelioma was not caused or contributed to by any chrysotile dust derived from [insert particular defendant's products] to which he may have been exposed." *Compare* R. Doc. Nos. 220-4, 220-5, 220-6, 220-7, 220-8, 220-9.  The reports also offer general causation testimony regarding the effects of exposure to chrysotile dust.  In short, Dr. Graham opines that "prolonged heavy exposures" to chrysotile dust are required before the risk of developing malignant mesothelioma is increased. *See, e.g.*, R. Doc. No. 220-4, at 2.

The plaintiffs ask the Court to exclude Dr. Graham's causation testimony on three separate grounds.  The Court addresses each in turn.

## A.

The plaintiffs first assert that Dr. Graham's report violates Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, which requires an expert witness to include in his report "a complete statement of all opinions the witness will express and the basis and reasons for them."  They argue that Dr. Graham's report is deficient because he

---

[4] Dr. Graham was hired by defendants IMO Industries, Inc., Warren Pumps, Inc., Air & Liquid Systems Corp. (successor to Buffalo Pumps, Inc.), Crane Co., York International, Inc., and Aurora Pump Co.

does not cite to sufficient authority or evidence to support his specific causation opinions regarding each defendant's products. That argument is essentially the plaintiffs' substantive objection to Dr. Graham's testimony repackaged as a procedural attack.

The basic purpose of Rule 26 is to prevent prejudice and surprise. *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013). Dr. Graham's expert report contains sufficient facts and reasoning regarding the basis for his opinions. The fact that the plaintiffs do not believe that the basis is adequate to support Dr. Graham's expert opinions is really a *Daubert* challenge to the reliability of the opinions, not a Rule 26 challenge. Dr. Graham's report was sufficiently detailed to allow the plaintiffs to prepare their own experts, prepare for his deposition, and plan for cross examination. Even if Dr. Graham's report did not satisfy all of the technical requirements of Rule 26, his failure to do so was harmless and not a basis for excluding Dr. Graham's opinions. *See* Fed. R. Civ. P. 37(c).

## B.

The plaintiffs next challenge Dr. Graham's general causation opinions regarding chrysotile dust exposure as unreliable under the *Daubert* framework. They argue that his opinions are contradicted by the medical and scientific literature. Having reviewed the proposed testimony and the briefs, however, the Court concludes that these are issues that the plaintiffs can address through vigorous cross-examination or counter with their own expert witnesses. *See, e.g., United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be

assigned that opinion rather than its admissibility and should be left for the jury's consideration."). The Court will allow Dr. Graham to offer general causation testimony regarding the nature of chrysotile dust and the effects of exposure to it.

### C.

The plaintiffs argue that even if the Court will not exclude Dr. Graham's general causation opinions, it should at the very least exclude his opinions that Mr. Bell's pleural malignant mesothelioma "was not caused or contributed to by any chrysotile dust derived from" any of the six defendants' products. The Court agrees that these specific causation opinions are unreliable and must be excluded.

The problem with Dr. Graham's proposed testimony is the same problem the Court addressed with respect to the proposed testimony of plaintiffs' experts—Dr. Kraus, Dr. Kradin, and Mr. Parker. If anything, Dr. Graham's proposed testimony is even more flawed. This Court recently explained in *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015) (Africk, J.), that a "one-size-fits-all approach" to specific causation testimony is impermissible. It is difficult to imagine a clearer example of such an approach than Dr. Graham's opinion, which draws no distinctions whatsoever between Mr. Bell's exposures to each of the defendant's products.

With no qualitative analysis accounting for "any differences or nuances of duration, concentration, exposure, and the properties of the fibers" to which Mr. Bell may have been exposed, Dr. Graham's report proceeds directly from general causation testimony to the specific opinion that Mr. Bell's mesothelioma cannot be attributed to any of these six defendants. *See Comardelle*, 76 F. Supp. 3d at 634. Dr.

Graham does not account for the types of products manufactured by the defendants (i.e. valves, pumps, and refrigeration equipment) or the different manners in which Mr. Bell may have come into contact with those products. It appears that Dr. Graham may not even have considered Mr. Bell's deposition testimony when forming his opinion, as he has not listed Mr. Bell's deposition testimony in his report as something he reviewed. The only conclusion that may be implied from such a lack of information is that such qualitative distinctions were of no significance to Dr. Graham.

This is the third opinion this Court has rendered on this issue in this case. There is no need to continue to beat a dead horse. Suffice it to say, in the realm of asbestos exposure, the percentages alone simply do not bear out specific causation testimony one way or the other. *See Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 847 (E.D. N.C. 2015) ("[I]ncreasing the likelihood of disease is a different matter than actually causing such disease."). The analytical gap is too great. Accordingly, Dr. Graham may not offer the specific causation opinion that a defendant's products did not cause or contribute to causing Mr. Bell's mesothelioma. Plaintiffs' motion is granted as to this issue.

## II.

The Court now turns to Dr. Mark Taragin, an epidemiologist retained by defendant Aurora Pump Company. The plaintiffs argue that Dr. Taragin's causation opinions should be excluded because he did not include all of the bases for his opinions in his expert report and because his opinions are unreliable. The Court addresses each argument in turn.

## A.

As previously explained, Rule 26(a)(2)(B) requires an expert witness to submit a report containing (among other things) "a complete statement of all opinions the witness will express and the basis and reasons for them."  Dr. Taragin admitted during his deposition that he did not read or rely on the expert reports of John Spencer or Thomas McCaffrey—two of Aurora Pumps' other experts—when formulating the opinions in his report. *See* R. Doc. No. 225-6, at 4.  However, after Dr. Taragin submitted his report but before he was deposed, Dr. Taragin received copies of Spencer and McCaffrey's reports (and possibly a transcript from the deposition of one of them).  *See id.*  Dr. Taragin then identified Spencer and McCaffrey's reports during his deposition as material on which he relied when formulating his expert opinions. *See id.* at 3.  The plaintiffs now move to exclude any opinion by Dr. Taragin which was formed in reliance on Spencer or McCaffrey's reports because neither Spencer nor McCaffrey's report was identified as a basis for Dr. Taragin's opinions in his expert report.  But excluding Dr. Taragin's opinions on that basis is unnecessary.

Pursuant to Rule 26(e)(1)(A), Aurora Pumps was required to supplement Dr. Taragin's report to include the missing information unless "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  The plaintiffs learned during Dr. Taragin's deposition that he was relying on Spencer and McCaffrey's reports.  As such, it is questionable whether a supplemental report was required under Rule 26(e).  But even if Aurora Pumps should have submitted a supplemental report, the

plaintiffs have sustained no prejudice to speak of. Plaintiffs have deposed Spencer, McCaffrey, and Dr. Taragin. There has been no unfair surprise or trial by ambush. Absent such prejudice, the Court will not exclude Dr. Taragin's opinion. *See* Fed. R. Civ. P. 37(c).

## B.

The plaintiffs also argue that Dr. Taragin's opinions regarding medical causation should be excluded because Dr. Taragin is not qualified. If the Court will not exclude all of Dr. Taragin's causation testimony on that ground, the plaintiffs assert that at the very least his specific causation testimony should be excluded as unreliable.

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* (citing *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Under that standard, the Court sees no reason why, as a general matter, an expert in epidemiology should not be considered qualified to offer a causation opinion in a toxic tort case. Epidemiology, after all, "attempts to define a relationship between a disease and a factor suspected of causing it." *Brock v. Merrell Dow Pharm., Inc.*, 874 F.2d 307, 311 (5th Cir.), *modified on reh'g*, 884 F.2d 166 (5th Cir. 1989). Dr. Taragin is qualified to testify regarding general

9

causation and the jury can consider his credentials and give his testimony the weight it deserves.

Again, however, for the reasons set forth above, Dr. Taragin may not offer the specific causation opinion that "Aurora Pumps was not a substantial contributing factor for Mr. Bell's mesothelioma." *See* R. Doc. No. 225-4.  The Court will not allow Aurora Pumps' expert to entirely rely on evidence of general causation to offer the "specific causation opinion in this case" that a particular product did not cause Mr. Bell's mesothelioma.  *Comardelle*, 76 F. Supp. 3d at 635.

**III.**

For the foregoing reasons,

**IT IS ORDERED** that the motions are **GRANTED IN PART** and **DENIED IN PART** as set forth herein.


New Orleans, Louisiana, March 6, 2017.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**