UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. BELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-6394** |
| **FOSTER WHEELER ENERGY CORP. ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is the second round of motions for summary judgment filed by each of the defendants. The Court denied the first motions without prejudice because they were filed when defendants anticipated that this Court would adopt the Sixth Circuit's version of the bare metal defense. As explained in a previous order and reasons, *see* R. Doc. No. 352, this Court disagrees with the Sixth Circuit's approach and it concludes that the bare metal defense should immunize only a narrower range of conduct.

The Court allowed defendants to file new summary judgment motions premised on the liability scheme the Court described in its previous order. In a December 8, 2016 email to counsel, the Court instructed counsel that: "Any motions filed must be entirely new motions -- i.e., they should not be additional briefs in support of arguments made in earlier motions. Any arguments not raised in the new motions will not be considered." Several of the defendants ignored that directive and attempted to incorporate arguments from the original motions into the new motions. Those arguments will not be considered.

With that understanding in mind, the Court addresses each motion in turn. For the reasons that follow, the Court grants summary judgment in favor of York International Corporation and Foster Wheeler Energy Corporation, and denies summary judgment to all other defendants.

## I.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine dispute of material fact exists when the "evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine dispute. *Id*. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id*. at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II.

As many of the defendants' briefs are similar or even identical in certain respects, the Court makes several broad rulings before addressing each motion individually.

### A.

First, a number of defendants ask the Court to reconsider its decision in R. Doc. No. 352. The Court declines to do so. Defendants advance essentially the same arguments the Court considered and rejected in reaching its original decision. The Court recognizes that its "third view" of the appropriate scope of liability in these circumstances is somewhat unique, however this Court is not the first to reject the strict version of the bare metal defense articulated by the Sixth Circuit in *Lindstrom v. A-C Prods. Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005). *See, e.g.*, *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 769-70 (N.D. Ill. 2014); *In re N.Y.C. Asbestos Litig.*, ___ N.E.3d ___, 27 N.Y.3d 765, 790-99 (2016). The Court is not convinced that its decision constituted a manifest error of law. *See Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

B.

Second, many of the defendants attempt to escape liability by asserting the government contractor defense. That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract. *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)). The defense applies when (1) the government approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the contractor warned the government about the dangers in the use of the equipment that were known to the contractor but not to the government. *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 334 (5th Cir. 1991) (citing *Boyle*, 487 U.S. at 511). The first two elements assure that "the government, and not the contractor, is exercising discretion in selecting the design." *Id.* The third element is necessary to eliminate any incentive that this defense may create for contractors to withhold knowledge of risks. *Id.*

After reviewing the evidence submitted by the parties, the Court is unable to conclude at this stage that the first two prongs of the government contractor defense have been satisfied as a matter of law. Further, the Court faces conflicting evidence regarding the third element of the defense—whether the dangers in the use of the equipment were known to the defendants but not to the government. These issues are better left for the jury. *See Boyle*, 487 U.S. at 514 ("[W]hether the facts establish the conditions for the defense is a question for the jury.").

## C.

Most of the defendants also argue that summary judgment is appropriate because the plaintiffs cannot prove causation. "Whether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prods Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1974). Several of the defendants argue that William Bell does not offer sufficient specifics or detail in his deposition testimony to conclude that he was exposed to asbestos in or on the defendant's products. But the Fifth Circuit "has inferred proximity to products from purely circumstantial evidence similar to the evidence in this case." *See Slaughter v. S. Talc Co.*, 949 F.2d 167, 172 (5th Cir. 1991). "In *Whatley v. Armstrong World Industries*, 861 F.2d 837 (5th Cir. 1988), for instance, [the Fifth Circuit] upheld a jury's allocation of fault for plaintiff's asbestos-related injury, even though there was no direct evidence that the plaintiff had worked with the defendants' products." *Id*. Except with respect to York International Corporation and Foster Wheeler Energy Corporation, there is sufficient evidence in the record to create a genuine material fact dispute as to the extent of William Bell's exposure to each defendant's products. The causation issue is best left for trial, where the jury can decide for itself the extent of William Bell's exposure and the jury can benefit from detailed expert testimony from both sides regarding the nature of asbestos exposure.

5

There is one additional causation issue worth addressing with respect to expert testimony. IMO Industries, Inc. argues[1] that a plaintiff cannot meet his burden of proof on causation in a toxic tort case without expert testimony as to specific causation. *See* R. Doc. No. 404-2, at 4. But the cases cited by IMO Industries, *see* R. Doc. No. 404-2, at 4 n.12, only establish that expert testimony on causation is required—not that an expert opinion as to specific causation is required. *See, e.g.*, *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 729 (5th Cir. 2009) ("And, without admissible expert evidence in this toxic-tort case, Seaman cannot prove causation.").

IMO Industries essentially alleges that if an expert cannot render a reliable opinion as to specific causation, then a jury cannot find that the plaintiff proved specific causation as a matter of law. But that is incorrect. The standard for offering an opinion as an expert is wholly distinct from the standard by which a jury must judge the plaintiff's case. Expert testimony regarding general causation combined with specific evidence regarding the nature of the decedent's exposure may be sufficient to permit the jury to conclude that a particular defendant's product was a substantial factor in causing William Bell's mesothelioma.

## D.

### 1.

There are a couple of global points to address with respect to component part manufacturers. The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of

---

[1] Warren Pumps also advances this argument. *See* R. Doc. No. 405-3, at 4.

evidence supporting the other party's case. *Celotex Corp.*, 477 U.S. at 323. Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The defendants do not suggest an absence of evidence as to whether defendants (1) knew or had reason to know that asbestos was harmful,[2] (2) knew or had reason to know that adequate warnings regarding asbestos would not be provided, or (3) provided warnings. Accordingly, when deciding whether defendants are entitled to summary judgment, the Court assumes that a genuine dispute of material fact exists as to each of those issues. As articulated by this Court, a bare metal component part manufacturer that knows that asbestos is harmful and that insufficient asbestos warnings would be provided, but nonetheless does not provide a warning regarding asbestos, may be held liable under general maritime law in three situations. *See* R. Doc. No. 352, at 17-18.

First, if the bare metal component manufacturer substantially participated in the integration of its bare metal part with the asbestos-containing finished product, the component manufacturer is treated like the manufacturer of the finished product and may be held liable when the defective finished product causes injury. Second,

---

[2] The Court notes that the question of whether defendants knew or had reason to know that asbestos was harmful is legally distinct from the questions raised pursuant to a government contractor defense such as whether the Navy had greater knowledge of the hazards of asbestos. The Court declines to transform defendants' government contractor defense arguments into something else.

the bare metal component manufacturer may be liable under certain circumstances where it supplies its bare metal component to a known incompetent. Liability under that theory is likely to be rare, and in any event such theory is inapplicable to this case. Third, if the bare metal component manufacturer recommends that asbestos be used in conjunction with its bare metal part, the component manufacturer may be held liable where the recommendation "negligently gives false information to another," and "harm results" to either (1) the recipient of the information or (2) "third persons" that the component manufacturer "should expect to be put in peril by the" negligent recommendation. Restatement (Second) of Torts § 311.

Because the defendants do not argue in their motions that they did not know asbestos was harmful, that they did not know insufficient warnings regarding asbestos would be provided, or that they provided warnings regarding asbestos, the bare metal component manufacturers can only win summary judgment by demonstrating (1) that they did not substantially participate in the integration of their bare metal part with the asbestos-containing finished product, and (2) that they did not recommend the use of asbestos in conjunction with their product.[3] If the plaintiffs can direct the Court to a genuine dispute of material fact on either point, summary judgment would be inappropriate.

---

[3] As already explained, the Court has rejected summary judgment arguments premised on the government contractor defense and on a lack of causation, as there are genuine fact disputes regarding those issues.

8

**2.**

With regard to manufacturers of finished products, if the plaintiffs can establish that a failure to warn regarding a product as originally manufactured is a proximate cause of a subsequent asbestos-related injury, then a defendant that included asbestos components in a finished product without a sufficient warning as to those components must demonstrate that an aftermarket product was a superseding cause of any injury. Defendants have not at this stage demonstrated any superseding causes as a matter of law. Accordingly, given that the Court is deferring, for now, the issue of whether any manufacturer's failure to warn was a substantial factor in causing Mr. Bell's mesothelioma, plaintiffs can overcome the bare metal defense simply by demonstrating that a defendant did not ship a bare metal product—*i.e.*, the defendant shipped a finished product with asbestos components. The same holds true for manufacturers of non-bare metal components.

**III.**

The Court first considers the motion[4] for summary judgment filed by York International Corporation. York supplied the refrigeration compressors for the USS Noble.[5] York also supplied valves to be used in conjunction with the compressor unit. Mr. Bell admitted that he did not work on the compressors themselves.[6] Rather, the plaintiffs claim that Mr. Bell was exposed to asbestos insulation while changing

---

[4] R. Doc. No. 395.
[5] While York also supplied compressors for another vessel on which Mr. Bell worked, the USS Grapple, Mr. Bell admitted that no asbestos exposure occurred on the USS Grapple. *See* R. Doc. No. 395-3, at 188:12-188:13.
[6] R. Doc. No. 395-3, at 188:24-190:3.

valves on pipes connected to the York compressors because Mr. Bell was required to remove asbestos insulation on the pipes in order to change the valves.[7]

A manufacturer is not liable simply upon a showing that asbestos ended up on the manufacturer's product many years after a product is manufactured. "When a claim runs against a manufacturer of a bare metal component part that was used in conjunction with an asbestos product, then the manufacturer's liability turns on whether the manufacturer did something beyond manufacturing the component part that was used in conjunction with the asbestos." R. Doc. No. 352, at 17. Because the plaintiffs point to no genuine dispute of material fact that York has any legal responsibility whatsoever for the insulation on the compressors, the Court grants summary judgment in favor of York.

York simply had no connection to any asbestos products with which Mr. Bell allegedly came into contact. Mr. Bell did not work on the compressors themselves. The valves supplied by York were delivered in shredded lead packing, not asbestos packing.[8] Mr. Bell testified that York's manuals did not specifically call for the use of asbestos insulation on the pipes to the compressors,[9] and that he did not know the manufacturer of the insulation on the salt-water lines[10] which connected to York's

---

[7] *See, e.g.*, R. Doc. No. 421-4, at 189:24-191:22.
[8] *See* R. Doc. No. 395-6.
[9] *See, e.g.*, R. Doc. No. 421-4, at 191:11.
[10] Plaintiffs' case focuses on the salt-water lines, rather than the refrigerant lines, because Mr. Bell's testimony suggests that only the salt-water lines on the ship at issue had asbestos insulation. *See* R. Doc. No. 421, at 3 (plaintiffs' brief noting that Mr. Bell "stated the black insulation was for the refrigerant lines and that the *asbestos* insulation was for the seawater lines" (emphasis added)). York's expert report suggests the black insulation on the refrigerant lines was compressed molded cork, *see* R. Doc. No. 395-6, at 2-3, and York submits evidence that the Navy

10

compressors.[11] All he knew was that there was asbestos on and around the compressors because he knew what asbestos looked like. Mr. Bell's only basis for asserting that the asbestos was installed by York was his speculation that "it had to be" because he did not "think the equipment would work without insulation."[12] But Mr. Bell contradicts himself on the latter point in his second deposition when he testified that the insulation was simply a safety measure.[13] Moreover, even if insulation was necessary for the compressors to function, that fact neither establishes that *asbestos* insulation was required nor that York would even suspect that asbestos insulation would be used by the Navy.

But even if the use of asbestos insulation on the salt-water piping was foreseeable to York, this Court has already rejected the notion that a bare metal component manufacturer has a duty to warn regarding asbestos simply because the use of asbestos with its product is foreseeable. *See* R. Doc. No. 352, at 8 (noting that "such a duty would be impossibly broad"). Accordingly, the plaintiffs simply lack the necessary evidence that York either supplied, or recommended, or had any connection

---

regulations mandated that insulation for refrigerant lines was to be made of cork, not asbestos, *see* R. Doc. No. 395-7, at 30.

[11] *See, e.g.*, R. Doc. No. 310-4, at 196:25. Mr. Bell's testimony in his second deposition does not resolve this issue. Mr. Bell's testimony was not specific as to whether the asbestos—rather than the compressors—was manufactured by York, *see* R. Doc. No. 310-5, at 60:5-60:9, and, as such, provides no basis for disregarding Mr. Bell's testimony at his first deposition that he did not know who manufactured the asbestos.

[12] *See, e.g.*, R. Doc. No. 421-4, at 191:17-18.

[13] *See, e.g.*, R. Doc. No. 310-5, at 58:16-22.

11

at all[14] to the asbestos insulation to which Mr. Bell claims to have been exposed to on the exterior of York's compressors.[15]

There is no genuine dispute of material fact to preclude the Court from determining that York is not liable in this case. The Court grants York's motion for summary judgment and dismisses all claims against York with prejudice.

## IV.

The Court now turns to the motion[16] for summary judgment filed by General Electric Company. Plaintiffs have demonstrated a genuine dispute of material fact as to whether General Electric supplied products with asbestos components,[17] as to whether General Electric substantially participated in the integration of its turbine with asbestos,[18] and as to whether General Electric specified the use of replacement

---

[14] *See, e.g.*, R. Doc. No. 421-12, at 30:19 (York corporate representative testifying York compressor did not have asbestos in it).

[15] Plaintiffs' briefing is unclear as to whether plaintiffs allege that Mr. Bell was exposed to asbestos from a York-supplied or recommend valve, or whether Mr. Bell was simply exposed to asbestos insulation while changing valves. Regardless, plaintiffs point to no evidence at all establishing that the York-supplied or recommended valves on Mr. Bell's ship had asbestos in them. The best plaintiffs do is to demonstrate that some York valves that were used for warehouses—and not U.S. Navy vessels—contained asbestos, *see* R. Doc. No. 421-12, at 38:2-19, and that is not sufficient to defeat summary judgment.

[16] R. Doc. No. 396.

[17] *See, e.g.*, R. Doc. No. 419-6, at 41:17-42:24 (General Electric corporate representative testifying that General Electric supplied original and replacement asbestos throttle valve gaskets).

[18] *See* R. Doc. No. 419-9, at 2-3 (declaration from expert that General Electric was "involved in the design and the development of military specifications for their equipment, as well as the use and incorporation of asbestos-containing products for use on and with their equipment"); R. Doc. No. 419-21, at 107:21-24 (testimony from plaintiff's expert that "the manufacturer is the guy that is leading the pack when he is designing a new turbine"); *cf.* R. Doc. No. 419-6, at 67 (General Electric corporate representative testifying regarding GE's participation).

asbestos parts with its turbines.[19] As such, the motion for summary judgment is denied.

V.

The Court next considers the motion[20] for summary judgment filed by Crane Company. Plaintiffs have demonstrated a genuine dispute of material fact as to whether Crane specified the use of asbestos with its valves,[21] and as to whether Crane's incorporation of asbestos components into its valves proximately caused Mr. Bell's injury.[22] To be sure, the Court recognizes that Crane may disagree with the plaintiffs' view of the evidence,[23] but that is an issue for trial. *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (court cannot weigh evidence and resolve disputed issues in favor of party moving for summary judgment).

VI.

The Court now turns to the motion[24] for summary judgment filed by Air & Liquid Systems Corporation ("Buffalo").[25] Plaintiffs have demonstrated a genuine dispute of material fact as to whether Buffalo specified the use of asbestos with its

---

[19] *See, e.g.*, R. Doc. No. 419-21, at 101:19-24 (testimony from plaintiff's expert that manufacturers had responsibility for developing spare parts list to be used with turbines).
[20] R. Doc. No. 397.
[21] *See, e.g.*, R. Doc. No. 413-9, at 3 (expert declaration that Crane specified the use of asbestos products with their valves); R. Doc. No. 413-5, at 51:20-52:8 (plaintiff testifying at deposition that Crane specified the use of asbestos).
[22] *See, e.g.*, R. Doc. 413-10, at 27:15-20 (Crane corporate representative testifying that Crane would assemble products with asbestos components.).
[23] *See, e.g.*, R. Doc. No. 397-2.
[24] R. Doc. No. 398.
[25] Air & Liquid Systems Corporation is the successor by merger to Buffalo Pumps, Inc. and all of the parties refer to it as "Buffalo." The Court does the same.

pumps,[26] and as to whether Buffalo would ship asbestos components with the final pumps it assembled.[27]

## VII.

The Court now considers the motion[28] for summary judgment filed by Aurora Pump Company. Plaintiffs have demonstrated a genuine dispute of material fact as to whether Aurora specified the use of asbestos components,[29] and as to whether Aurora would ship asbestos components with the final pumps it assembled.[30]

## VIII.

Next the Court considers the motion[31] for summary judgment filed by Atwood & Morrill Co., Inc. Plaintiffs have demonstrated a genuine dispute of material fact as to whether Atwood specified the use of asbestos components in its valves,[32] and as

---

[26] *See, e.g.*, R. Doc. No. 416-6, at 57:4-12 (Buffalo corporate representative testifying that Buffalo specified the type of packing to be used); *see also* R. Doc. No. 416-9, at 3 (expert declaration that Buffalo specified the use of asbestos with its pumps).
[27] *See, e.g.*, R. Doc. No. 416-33 (military specification indicating pump manufacturer needed to provide one replacement set of packing to the military).
[28] R. Doc. No. 399.
[29] *See, e.g.*, R. Doc. No. 417-9, at 3 (expert declaration that Aurora specified the use of asbestos with its pumps); R. Doc. No. 417-9, at 21 (expert report that Aurora specified the use of asbestos with its pumps); *see also* R. Doc. No. 417-6, at 42:23-44:19 (Aurora corporate representative indicating that Aurora technical manuals would specify the proper replacement parts to use).
[30] *See, e.g.*, R. Doc. No. 417-17 (military specification indicating pump manufacturer needed to provide one replacement set of packing to the military).
[31] R. Doc. No. 400.
[32] *See, e.g.*, R. Doc. No. 418-9, at 3 (expert declaration that Atwood specified the use of asbestos products with its valves); R. Doc. No. 418-9, at 23 (expert report indicating expert will testify that Atwood specified the use of asbestos with its products); *see also* R. Doc. No. 418-6, at 45:14-18 (Atwood corporate representative indicating that Atwood instruction manual would specify proper replacement parts).

to whether Crane's incorporation of asbestos components into its valves proximately caused Mr. Bell's injury.[33]

## IX.

The Court now considers the motion[34] for summary judgment filed by CBS Corporation. Plaintiffs have demonstrated a genuine dispute of material fact as to whether CBS substantially participated in the integration of its shipboard turbines with asbestos.[35]

## X.

The Court next considers the motion[36] for summary judgment filed by Foster Wheeler Energy Corporation. Plaintiffs allege that Mr. Bell was exposed to asbestos multiple times when asbestos insulation on Foster Wheeler condensers was chipped off in order to service parts of the condensers.[37] However, plaintiffs point to no facts establishing that Foster Wheeler has any legal responsibility for the insulation on the condensers, and plaintiffs have not demonstrated that the use of asbestos to insulate the condensers was foreseeable to Foster Wheeler.

---

[33] *See, e.g.*, R. Doc. No. 418-6, at 44:13-24 (Atwood corporate representative testifying that Atwood employees would incorporate asbestos products into final Atwood products); *see also* R. Doc. No. 418-6, at 67:22-69:3 (Atwood corporate representative testifying he believed that Atwood glove valves had asbestos components).
[34] R. Doc. No. 401.
[35] *See, e.g.*, R. Doc. No. 420-29, at 107:21-24 (testimony from plaintiff's expert that "the manufacturer is the guy that is leading the pack when he is designing a new turbine"); *see also* R. Doc. No. 420-6, at 11:19-12:12 (CBS corporate representative testifying that CBS designed and manufactured turbines); *cf.* R. Doc. No. 420-6, at 13:22-23 (CBS representative noting that "a significant design process . . . goes [in]to building the turbine").
[36] R. Doc. No. 403.
[37] *See, e.g.*, R. Doc. No. 422-4, at 91:5-20; 93:9-94:10; 95:5-13.

15

Plaintiffs neither point to actual evidence that the condensers were delivered with asbestos from Foster Wheeler,[38] nor demonstrate that Foster Wheeler specified that the Navy should use asbestos insulation with the condensers. Instead, the best plaintiffs do is a passing reference from Mr. Bell that the "condensers wouldn't work if they weren't insulated" and the "[condenser] come[s] from the manufacturer with all of that on it."[39] Those isolated statements are insufficient to defeat summary judgment.

In the first place, this Court has doubts about the accuracy of Mr. Bell's testimony on this particular point given that plaintiffs' own expert testified that he's "never seen condensers insulated in my work."[40] But even when the Court credits Mr. Bell's testimony—as it must on summary judgment—Mr. Bell conceded that he had no personal knowledge as to whether the condensers were delivered with asbestos.[41] As such, Mr. Bell's passing statement that the condensers come from the manufacturer with insulation on them does not create a genuine dispute of fact as to whether the condensers at issue were delivered with asbestos insulation. *See Little*, 37 F.3d at 1075 (genuine dispute of material fact precluding summary judgment is not created by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence").

---

[38] Foster Wheeler's corporate representative testified that Foster Wheeler condensers were shipped "bare metal." R. Doc. 403-7, at 79:18.
[39] R. Doc. No. 422-5, at 26:4-8.
[40] R. Doc. No. 403-8, at 24:4-5.
[41] R. Doc. No. 422-4, at 96:25-97:7.

Likewise, Mr. Bell's statement that the condensers required insulation does not establish that a condenser required *asbestos* insulation, and plaintiffs' own expert noted that multiple other types of insulation—such as fiberglass and mineral wool[42]—could be used with a condenser.  As such, plaintiffs cannot establish a genuine dispute of material fact as to whether it was even *foreseeable* to Foster Wheeler that asbestos would be used in conjunction with its product.  Without showing that the use of asbestos was foreseeable, plaintiffs cannot hope to demonstrate that Foster Wheeler breached any applicable duty to warn.

Plaintiffs are left only with the point that some Foster Wheeler representatives were "[a]lmost certainly" present while work was being done on Foster Wheeler condensers.[43]  But without knowing whether there actually were Foster Wheeler representatives present, or what they were doing, or what their responsibilities were, the Court is left without the information it needs to determine whether Foster Wheeler had any duties under tort law, or whether there was any applicable breach of a duty.

The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex Corp.*, 477 U.S. at 323.  Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The lack of any

---

[42] R. Doc. No. 403-8, at 23:6-7.
[43] R. Doc. No. 422-4, at 98:3-5; *see also* R. Doc. No. 422-5, at 20:21-22:5.

evidence that Foster Wheeler was involved in the decision to use asbestos insulation on the compressors is dispositive of plaintiffs' claims given that plaintiffs have the burden of demonstrating a genuine material fact issue for trial. The Court grants Foster Wheeler's motion for summary judgment and dismisses all claims against Foster Wheeler with prejudice.[44]

## XI.

The Court now turns to the motion[45] for summary judgment filed by IMO Industries, Inc. Plaintiffs have demonstrated a genuine dispute of material fact as to whether IMO specified the use of asbestos components with its pumps,[46] and as to whether IMO's incorporation of asbestos components into its pumps proximately caused Mr. Bell's injury.[47]

## XII.

Finally, the Court considers the motion[48] for summary judgment filed by Warren Pumps, LLC. Plaintiffs have demonstrated a genuine dispute of material fact as to whether Warren specified the use of asbestos components in its pumps,[49]

---

[44] Plaintiffs do not raise any allegations of additional exposures with respect to Foster Wheeler products. *See* R. Doc. No. 422-4, at 95:14-96:11, 98:23-99:7.
[45] R. Doc. No. 404.
[46] *See, e.g.*, R. Doc. No. 414-6, at 58:19-59:8 (IMO corporate representative testifying that technical manuals generally specified the proper replacement parts to use); *see also* R. Doc. No. 414-9, at 2 (expert declaration that IMO specified the use of asbestos-containing materials with their pumps).
[47] *See, e.g.*, R. Doc. No. 414-6, at 65:20-66:3 (IMO corporate representative testifying that certain pumps were designed and manufactured with asbestos components); R. Doc. No. 414-6, at 71:2-10 (same).
[48] R. Doc. No. 405.
[49] *See, e.g.*, R. Doc. No. 415-6, at 67:2-5 (Warren corporate representative testifying that Warren would provide technical manuals specifying the use of asbestos

and as to whether Warren's incorporation of asbestos components into its pumps proximately caused Mr. Bell's injury.[50]

## XIII.

Based on the Court's review of the motions for summary judgment and for the foregoing reasons,

**IT IS ORDERED** that the motions filed by General Electric Company, Crane Company, Buffalo, Aurora Pump Company, Atwood & Morill Co., Inc., CBS Corporation, IMO Industries, Inc., and Warren Pumps, LLC are **DENIED**.

**IT IS FURTHER ORDERED** that the motions filed by York International Corporation and Foster Wheeler Energy Corporation are **GRANTED** and that all of plaintiffs' claims against York International Corporation and Foster Wheeler Energy Corporation in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 6, 2017.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

components); R. Doc. No. 415-9, at 3 (declaration from expert that Warren specified the use of asbestos components with Warren pumps).
[50] *See, e.g.*, R. Doc. No. 415-6, at 52:22-53:5 (Warren corporate representative testifying that Warren would assemble pumps with asbestos components).