UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM C. BELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-6394** |
| **FOSTER WHEELER ENERGY CORP. ET AL.** | **SECTION I** |

### AMENDED ORDER AND REASONS

William Bell was regularly exposed to asbestos while serving as an engineman, machinery repairman, and a machinist mate in the United States Navy in the 1960s. The majority of Mr. Bell's exposure occurred while he was serving at sea on four ships, and it is settled that general maritime law governs liability for those exposures. But Mr. Bell also claims that he was exposed to asbestos during a six month period in which he was training at the land-based Naval Reactors Facility in Idaho. Through earlier summary judgment briefing, it became apparent that the parties disagreed as to whether Idaho law or Louisiana law applied to the Idaho exposures. The Court ordered additional briefing[1] on the issue. The Court now rules as set forth herein.

### I.

Louisiana's choice of law rules determine which state's law applies. *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). Under Louisiana's choice of law approach, "if the laws of the states do not conflict, then no choice of law analysis is necessary, and [courts should] simply apply the law of the

---

[1] R. Doc. Nos. 371, 373, 384, 387.

forum state." *Id.*; *see also Champagne v. Ward*, 893 So. 2d 773, 786 (La. 2005). Further, "[u]nder Louisiana's choice of law rules, a sweeping determination that the law of one state applies to the case, as opposed to an issue in a case, constitutes a derogation of the appropriate analysis." *Favaroth v. Appleyard*, 785 So. 2d 262, 265 (La. App. 4 Cir. 2001). "When a conflict exists with regard to more than one issue, each issue should be analyzed separately." *Id.*; *see also* La. Civ. Code art. 3515, comment (d) ("This Article does not prohibit dépeçage[, however] [t]he unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.").

The parties identify two pertinent conflicts. First, Louisiana allows a survival action under these circumstances and Idaho does not.[2] Second, Idaho allows the

---

[2] The Louisiana Civil Code provides for the survival of tort claims without qualification. La. Civ. Code art. 2315.1 ("If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive. . . ."). In Idaho, survival claims for all damages except damages for the decedent's pre-death pain and suffering are permitted only when the decedent's death was not related to the wrongful act or negligence. *See* Idaho Code § 5–327(2) ("A cause of action for personal injury or property damage caused by the wrongful act or negligence of another shall not abate upon the death of the injured person from causes not related to the wrongful act or negligence. Provided however, that the damages that may be recovered in such action are expressly limited to those for: (i) medical expenses actually incurred, (ii) other out-of-pocket expenses actually incurred, and (iii) loss of earnings actually suffered, prior to the death of such injured person and as a result of the wrongful act or negligence.").

In *Evans v. Twin Falls Cty.*, 796 P.2d 87, 92 (Idaho 1990), the Supreme Court of Idaho explained that "[a]t common law if the victim of a tort died before he recovered a judgment, the victim's right of action also died." Because Iowa Code § 73-116 provides that the rules of the common law are in effect in Idaho unless modified by other legislative enactments, *see id.*, the fact that Idaho Code § 5–327(2) only allows for survival actions where the decedent's death was not caused by the wrongful

2

recovery of punitive damages in a wrongful death action and Louisiana does not.[3] The Court analyzes each conflict separately and concludes that Louisiana law should apply to both the survivorship claim and the punitive damages issue.[4]

## II.

Unlike many other American jurisdictions, Louisiana has always had codified choice of law rules. *Trizec Properties, Inc. v. U.S. Mineral Prod. Co.*, 974 F.2d 602, 604-05 (5th Cir. 1992). Louisiana's general choice of law rules are set forth in Louisiana Civil Code article 3542. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001). Article 3542 provides:

> an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the

---

conduct means that in cases where the decedent's death was caused by the wrongful conduct, no survival claim is permitted.

[3] *Compare Pfau v. Comair Holdings, Inc.*, 15 P.3d 1160, 1165 (Idaho 2000) (recognizing that punitive damages are recoverable in such actions) *and Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1191 (Idaho 1992) (affirming jury award of punitive damages in wrongful death claim under Idaho law) *with Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002) (punitive damages only recoverable when expressly authorized by statute). Although plaintiffs argue that Louisiana law applies, they note the punitive damages conflict in the event the Court concludes that Idaho law governs.

[4] The parties also argue in lengthy footnotes whether either Louisiana or Idaho permits recovery based on an unreasonably dangerous per se theory of strict liability. But as even the defendants recognize in their briefing, the defendants have found "no authority" either approving or disapproving of such a theory under Idaho law. *See* R. Doc. No. 384, at 3 n.6. Accordingly, the defendants have not carried their burden of demonstrating a conflict between Louisiana law and Idaho law, and Louisiana law will apply by default. The Court makes no holding at this time as to whether Louisiana law would provide for such a theory of recovery under the facts of this case.

3

>relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. Civ. Code art. 3542.

Louisiana Civil Code article 3515, in turn, is the "general and residual rule" that guides and informs Louisiana's approach to choice of law and is closely paralleled by article 3542. *Marchesani*, 269 F.3d at 486. Article 3515 provides that, except as otherwise specified in the part of the Civil Code addressing choice of law:

>an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

Louisiana Civil Code articles 3543 through 3546 provide more specific choice of law rules which dictate the appropriate choice of law in certain scenarios. La. Civ. Code art. 3542, comment (b). When applicable, those articles generally prevail over the more generalized rules provided in article 3542. *Id.*; *see also* La. Civ. Code art. 3547.

### A.

The Court first addresses the survival claim. Because none of the specific choice of law provisions apply, the Court applies articles 3515 and 3542. Pursuant to those articles, the Court begins the analysis by identifying "the pertinent contacts of

4

each state," including "the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered." La. Civ. Code arts. 3515, 3542; *see also Marchesani*, 269 F.3d at 487. The first contacts to identify are the place of the alleged tortious conduct and the place of injury. Although William Bell was diagnosed with mesothelioma in Louisiana in 2015, Louisiana law considers Idaho to be the place where William Bell's injury occurred for purposes of the survival action. *See Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1083 (La. 2009) ("[Plaintiff's] injury occurred at the time of significant exposure to asbestos, not later when his disease (mesothelioma) manifested itself.").[5] As for the place where the alleged tortious behavior occurred, Idaho is clearly the state with the pertinent connection. All of the alleged tortious conduct took place in Idaho, and none of the alleged exposures occurred in Louisiana.

The next contact to identify is the place of domicile. Under Louisiana choice of law rules, courts look to the domicile of the decedent when considering a survival action. *See* La. Civ. Code art. 3544, comment (b). Although he spent a number of years outside of the State due to his naval service, William Bell was officially domiciled in Louisiana his entire life. The defendants are domiciled in various states, but none of them is domiciled in Louisiana or Idaho. As for the place where the relationship between William Bell and the defendants was centered, that must be

---

[5] Although the plaintiffs oppose this conclusion, what courts in other states have said about the choice of law rules in other states bears little relevance to the analysis.

Idaho as well. Indeed, both the alleged wrongful conduct and the injury occurred there.

Having identified the relevant contacts, the second step pursuant to articles 3515 and 3542 requires the Court to consider the state policies that might be implicated in the choice of law. *See* La. Civ. Code arts. 3515, 3542; *Marchesani*, 269 F.3d at 487. Both Idaho and Louisiana may have policy interests which could be implicated by the choice of law. Idaho, like all states, has an interest in regulating conduct within its borders. Louisiana, on the other hand, has an interest in seeing its injured citizens fully compensated—irrespective of where their injury occurs. After all, even when Louisiana domiciliaries are not injured in Louisiana, the effects and especially the expense of an injury will surely be felt here.

The third step of the choice of law analysis set forth by articles 3515 and 3542 requires the Court to evaluate the "strength and pertinence" of each state's policy interests in light of "the policies and needs of the interstate and international systems" so as to determine which state's policies would be "most severely impaired" if its law was not applied. *See* La. Civ. Code arts. 3515, 3542; *Marchesani*, 269 F.3d at 487. After doing so, the Court concludes that Louisiana's interests are stronger and would be more severely impaired if its survival law was not applied under these circumstances. *See* Louisiana Practice Series § 12:5 ("[E]ach state having factual contacts with a given multi-state case may not have an equally strong interest in regulating all issues in the case, but only those issues that actually implicate its policies in a significant way.").

The Court notes that in the tort context, Louisiana choice of law rules distinguish "issues pertaining to standards of conduct and safety" from "issues of loss distribution and financial protection." *Compare* La. Civ. Code art. 3543[6] *with* La. Civ. Code art. 3544.[7] The commentary to the Civil Code explains that the distinction

---

[6] Article 3543 provides:

> Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.
>
> In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.
>
> The preceding paragraph does not apply to cases in which the conduct that caused the injury occurred in this state and was caused by a person who was domiciled in, or had another significant connection with, this state. These cases are governed by the law of this state.

La. Civ. Code art. 3543.

[7] Article 3644 provides:

> Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
>
> (1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.
>
> (2) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state; and (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred, provided that (i) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that

"draws from the substantive law of torts and its two fundamental objectives—deterrence and compensation." La. Civ. Code art. 3543, comment (a). While the line between the two categories of law is not always clear, rules relating to conduct and safety generally encompass the so-called "rules of the road," or rules which regulate conduct. *See id.*; S. Symeonides, *Louisiana's New Law of Choice of Law for Tort Conflicts: An Exegesis*, 66 Tul. Law Rev. 677, 699-705 (1992). Issues of loss distribution and financial protection, on the other hand, include rules which—for example—impose a ceiling on the amount of compensatory damages available or rules which provide immunity from suit. *See id.*

According to the Civil Code's commentary, "[a] state's policy of deterrence embodied in its conduct-regulating rules is implicated in all substandard conduct that occurs within its territory, even if the parties involved are not domiciled in that state." *Id.* "Conversely, a state's loss-distribution policy may or may not extend to non-domiciliaries acting within its territory, but does extend to domiciliaries even when they act outside the state." *Id.* In other words, conduct-regulating rules are, generally speaking, tied to territoriality whereas loss-compensating rules are tied to domicile. Symeonides, 66 Tul. Law Rev. at 703. The distinction between conduct-regulating rules and loss-compensating rules is important to the choice of law decision between Louisiana's survivorship law and Idaho's survivorship law.

---

                    state, and (iii) the law of that state provided for a higher standard of financial protection for the injured person than did the law of the state in which the injurious conduct occurred.

La. Civ. Code art. 3544.

In *Marchesani*, the Fifth Circuit emphasized that under Louisiana's choice of law rules, "the ultimate question is not which state has the most significant interest in the dispute, but rather which state's policies would be most seriously impaired if its law were not applied to the issue." 269 F.3d at 488 (internal quotation marks and citations omitted). Furthermore, the Fifth Circuit noted that the Louisiana legislature "has made clear that '[w]hat is to be evaluated is not the wisdom or goodness of a state policy, either in the abstract or vis-à-vis the policy of another state, but rather the strength and pertinence of this policy in space.'" *Id.* (quoting La. Civ. Code art. 3515, Revision Comment (c)).

On the one hand, the alleged wrongful conduct and injury occurred in Idaho. On the other hand, the consequences of that conduct and injury are felt most acutely here in Louisiana where William Bell resided, where he was diagnosed with mesothelioma and died, and where his brother John Bell currently resides. As such, Louisiana's interests would suffer the greater impairment if a Louisiana domiciliary's injury remained unremedied by the operation of another state's law. Idaho's interests, in contrast, cannot be viewed as greatly impaired by the application of Louisiana law under these circumstances.

After all, it is not as if Idaho prohibits all survival actions in all circumstances. As the Court observed in *supra* note 2, if a decedent's death occurred "from causes not related to the wrongful act or negligence," a survival action is permitted under Idaho law. *See* Idaho Code § 5–327(2). It follows that the application of Louisiana's

9

survivorship provision—albeit in circumstances not recognized in Idaho—cannot be said to completely undermine Idaho public policy.

Further, because the availability of a survivorship action is better characterized as a loss-compensating rule and not a conduct-regulating rule, the personal contacts of this litigation to Louisiana are more significant than the territorial contacts of this litigation to Idaho with respect to the survivorship issue. Although the specific choice of law provisions set forth in articles 3543 to 3546 of the Louisiana Civil Code are not determinative of the inquiry under these facts, they are nevertheless instructive in gauging the strength of Louisiana's policy interests. In light of Louisiana's strong interest in ensuring that its domiciliaries are compensated—even when their injury occurs outside of Louisiana, and considering that Idaho's policy with respect to its survivorship law will not be greatly undermined by the application of Louisiana law in these circumstances, the Court concludes that Louisiana's policy interests would suffer the greater impairment if its law was not applied.

### B.

Next, the Court considers whether Idaho law or Louisiana law should apply to the question of punitive damages in a wrongful death suit. The Court again begins the analysis by identifying the pertinent contacts. As previously explained, Idaho is the state where the alleged tortious conduct occurred. But unlike the injury in the survival action, the injury in the wrongful death action is deemed to have occurred in Louisiana. As a wrongful death action is meant to compensate a survivor for the

injury he suffers upon the death of a relative or spouse, John Bell did not sustain an injury until his brother William died. *See Watkins v. Exxon Mobil Corp.*, 145 So. 3d 237, 241 (La. 2014) ("The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter.") (citation omitted). Because William Bell died in this state, that is where John Bell's injury occurred.

Louisiana is also the state with the relevant domiciliary connection. Under Louisiana choice of law rules, courts look to the domicile of the surviving plaintiff when considering a wrongful death action. *See* La. Civ. Code art. 3544, comment (b). As previously noted, John Bell—the wrongful death claimant—is domiciled in Louisiana. Also as previously noted, none of the defendants are domiciled in Louisiana or Idaho.

Because John Bell is a domiciliary of Louisiana and John Bell's injury is deemed to have occurred in Louisiana, article 3545 dictates that Louisiana punitive damages law—and indeed Louisiana law in general—must apply to the wrongful death claim. *See* La. Civ. Code art. 3545. Article 3545 provides:

> Delictual and quasi-delictual liability for *injury caused by a product*, as well as damages, whether compensatory, special, *or punitive*, are governed by the law of this state: (1) when *the injury was sustained in this state* by *a person domiciled or residing in this state*; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

*Id.* (emphasis added).

By its terms, article 3545 is dispositive in the products liability context. As such, the Court applies it here and concludes that Louisiana law applies.

11

## III.

For the foregoing reasons,

**IT IS ORDERED** that, with respect to the alleged Idaho exposures, Louisiana law will apply to both the survivorship claim and the wrongful death claim.

New Orleans, Louisiana, March 13, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**